**UNITED MINE WORKERS OF AMERICA, International Union; United Mine Workers Of America, District 31; Richard Eddy; George Thomas Ice; Delas A. Stuzen, Plaintiffs–Appellees,**

v.

**MARTINKA COAL COMPANY; Eastern Associated Coal Corporation, Defendants–Appellants.**

No. 99–1581.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1999.

Decided Feb. 4, 2000.

---

**ARGUED:** Bryan Rex Cokeley, Steptoe & Johnson, Charleston, West Virginia, for Appellants. Judith Ellen Rivlin, United Mine Workers of America, Washington, D.C., for Appellees. **ON BRIEF:** Charles D. Morrison, Vanessa L. Goddard, Steptoe & Johnson, Clarksburg, West Virginia, for Appellants. Charles F. Donnelly, Donnelly, Carbone & Kettler, P.L.L.C., Charleston, West Virginia, for Appellees.

Before NIEMEYER and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MOTZ and Senior Judge BUTZNER.

## OPINION

NIEMEYER, Circuit Judge:

In connection with their planned closing of a coal mine on December 5, 1995, Martinka Coal Company and Eastern Associated Coal Corporation gave notice on October 2, 1995, to more than 300 employees at the mine site that 89 employees would be laid off the next day and that the remaining employees would be laid off when the mine was closed in December. Three of the 89 employees laid off on October 3, 1995, and the union, as representative of the employees, commenced this action, contending that the 89 employees did not receive 60 days' notice of their layoff as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 *et seq.* The district court granted the plaintiffs' motion for summary judgment, awarding the 89 employees damages. Rejecting the employer's interpretation of the WARN Act, which would require notice only to employees laid off within a 30–day window surrounding the mine's closing, we affirm.

### I

Before October 1995, Martinka Coal Company and Eastern Associated Coal Corporation (collectively herein "Martinka")[1] employed over 300 employees at an underground coal mine near Fairmont, West Virginia, known as the Tygart River Mine. The mine consisted of a preparation facility and two underground mining areas.

In early August 1995, a major roof fall occurred in one of the mine's underground areas, prompting Martinka, after evaluating the economic viability of the mine, to decide to suspend all operations at the mine. Martinka prepared an undated "Action Plan for the Suspension of Operations," which laid out a schedule for (1) notifying customers and employees of the mine closure, (2) announcing the immediate layoff of 89 employees, and (3) completing remaining underground and surface work at the mine. On October 2, 1995, Martinka notified the employees at the mine site and the United Mineworkers of America (the "Union"), the employees' bargaining representative, that it would close the mine over a two-week period beginning December 5, 1995, resulting in the permanent loss of employment for the mine's employees. Also on October 2, Martinka first announced to its employees that it would lay off 89 employees the following day.

As announced, 89 employees were laid off on October 3, 1995, and coal extraction at the mine ceased on October 16. The remaining employees worked for approximately two more months on tasks such as recovering the equipment from the two underground areas and treating mine waste water. The majority of these employees were laid off when the mine closed completely in December 1995.

The Union and 3 of the 89 employees who were laid off on October 3, 1995, commenced this action against Martinka, alleging that Martinka failed to give 60 days' notice to the 89 employees laid off on October 3, 1995, before terminating their employment as a consequence of the mine closure, in violation of 29 U.S.C. § 2102(a), and demanding damages pursuant to 29 U.S.C. § 2104. The district court bifurcat-

1. The appellants Eastern Associated Coal Corporation and Martinka Coal Company are sister corporations, both wholly-owned subsidiaries of Coal Properties Corporation. During the period relevant to this appeal, the companies were parties to a management agreement under which Eastern provided management and administrative assistance related to Martinka's business and properties. The parties have agreed that, for the limited purpose of this litigation, the actions or inactions of agents and employees of Eastern can be imputed to and considered the actions or inactions of Martinka.

ed the liability and damages portions of the case. On cross-motions for summary judgment on the issue of whether the WARN Act entitled the 89 employees to 60 days' notice before they were laid off, the district court ruled in favor of the employees and against Martinka. After a bench trial on damages, the court awarded the employees $720,595 in the aggregate plus interest, totaling $857,454.95.

Martinka now appeals, challenging only the district court's ruling on the company's liability under the WARN Act.

## II

■ We are presented with the narrow but novel question of whether Martinka was required, under the WARN Act, to give the 89 employees laid off on October 3, 1995, 60 days' notice of their layoff. Because resolution of this issue turns on statutory construction, we review the district court's opinion *de novo*. *See United States v. Linney*, 134 F.3d 274, 282 (4th Cir.), *cert. denied*, 523 U.S. 1143, 118 S.Ct. 1852, 140 L.Ed.2d 1100 (1998).

The facts necessary for our decision are not in dispute. As a result of the roof collapse at its Tygart River Mine, Martinka determined to close the facility in December 1995. More than 60 days before then—on October 2, 1995—it gave the more than 300 employees at that facility notice of the plant closing. At the same time and as part of its determination to close the plant, Martinka also notified 89 of the employees that they would be laid off the next day, October 3, 1995. These employees contend that, even though they were given notice of the mine's closing 60 days before the shutdown, they were enti-

tled, under the WARN Act, to 60 days' notice before *their layoffs*.

The parties agree that Martinka is an "employer" as defined in the WARN Act, *see* 29 U.S.C. § 2101(a)(1), and that the closing of the Tygart River facility constituted a "plant closing," *see* 29 U.S.C. § 2101(a)(2).

■ The operative provision of the WARN Act states:

> An employer shall not order a plant closing ... until the end of a 60–day period after the employer serves written notice of such an order ... to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee.

29 U.S.C. § 2102(a). The purpose of the Act, as articulated by regulation,[2] is to provide

> protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs ... provid[ing] workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

20 C.F.R. § 639.1(a). Thus, while it is clear that the intent of the WARN Act would have all affected employees given 60 days' notice before their layoffs to permit them to arrange their employment affairs, the specific language of the Act is inartful, if not confusing.

---

2. The WARN Act specifically directs the Department of Labor to "prescribe such regulations as may be necessary to carry out [the Act]." 29 U.S.C. § 2107(a). The regulations are thus promulgated by the Department of Labor pursuant to statutory authority, and, if substantive, they have the force of law, *see Chrysler Corp. v. Brown*, 441 U.S. 281, 301–03, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979),

unless they are irreconcilable with the "clear meaning of a statute, as revealed by its language, purpose, and history," *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (quoting *Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979)).

Rather than linking the 60–day notice requirement to the date of an affected employee's layoff, the statutory language links the notice to an "order," the antecedent of which is provided in the following clause: "An employer shall not *order* a plant closing" until it has given the requisite 60 days' notice. 29 U.S.C. § 2102(a) (emphasis added). The statute would thus appear to assume that the "order" and "plant closing" are simultaneous acts, employing the term "order" in the sense of "to bring about." If the term "order" refers, rather, to a simple "direction" to close the plant made in advance of its closing, then the statute would make little sense. An employer could not give 60 days' notice of a plant closing without having thus "directed" the closing and thereby violated the statute.

■ It would therefore appear that the statutory language intended to require that 60 days' notice be given before the date of the "plant closing," and not the date that the employer first gives an order implementing its decision to close the plant. This conclusion is confirmed by the regulations' presumption that the 60–day period ends with the date of the plant closing itself. *See* 20 C.F.R. § 639.2 ("WARN requires employers ... to give affected employees at least 60 days' notice of such an employment action [a plant closing or a mass layoff]"); 20 C.F.R. § 639.5(a) ("[N]otice must be given at least 60 calendar days *prior to any planned plant closing* or mass layoff, as defined in these regulations" (emphasis added)).

Having concluded that the "order of a plant closing" is deemed to be the actual plant closing, we are still left with an ambiguity in the context of the factual circumstances before us. In the typical situation, a notice of plant closing given 60 days before the physical shutdown serves adequately to give employees laid off as a consequence of the shutdown 60 days' no-

tice of their layoff, because the date of the shutdown coincides with the date that employees are laid off. The WARN Act is adequately clear for application to such a circumstance. Left unaddressed, however, is the circumstance in which some of the employees are laid off in advance of the plant shutdown. From the statutory language, read out of context, it might be concluded that when an employer, in anticipation of a plant shutdown, lays off employees *before* the physical shutdown of the plant, those employees need not be given 60 days' notice of their layoffs. For example, if, in anticipation of a shutdown 60 days hence, the employer lays off one-quarter of his workforce on the date of the notice, one-quarter 30 days before the shutdown, and the remaining one-half on the date of the shutdown, an interpretation that relates notice to the date of shutdown would have one-quarter of the workers given no notice of their layoff, one-quarter given 30 days' notice, and one-half given a full 60 days' notice. Such a conclusion, however, would contradict the core purpose of the Act, if not its language, as well as the language of the regulations adopted under it.

The purpose of the WARN Act—to give affected employees a "transition time to adjust to the prospective loss of employment," 20 C.F.R. § 639.1(a)—would not be served if we were to conclude that when an affected employee's layoff date is earlier than the actual plant shutdown date, he must be given 60 days' notice of the shutdown date rather than his layoff date. An employee laid off because of a plant closing 59 days before the date of shutdown would be given a one-day notice of his termination, not 60 days' notice as was clearly intended. Recognizing, however, that a "plant closing" is defined to include as elements both the plant shutdown and the termination of employment, *see* 29 U.S.C. § 2101(a)(2),[3] we think it clear that the Act's purpose is best served by construing

---

**3.** Section 2101(a)(2) defines plant closing in essence as the "permanent or temporary shutdown" of a facility if the shutdown "results in an employment loss" of 50 or more employees.

29 U.S.C. § 2102(a) to tie the 60–day notice requirement to the date when loss of employment caused by the shutdown first occurs.

While the statutory language of 29 U.S.C. § 2101(a) does not satisfactorily address this factual circumstance, apparently having been drafted with the assumption that the plant shutdown date coincides with the layoff date, the regulations adopted under the statute make clear that when layoffs are made in stages before a plant shutdown, each group of employees laid off as a consequence of the closing is entitled to a full 60 days' notice of the employees' layoff. Section 639.5 of the regulations provides in relevant part:

> [N]otice must be given at least 60 calendar days prior to any planned plant closing. . . . When all employees are not terminated on the same date, the date of the first individual termination . . . triggers the 60–day notice requirement. A worker's last day of employment is considered the date of that worker's layoff. *The first and each subsequent group of terminees are entitled to a full 60 days' notice.*

20 C.F.R. § 639.5(a) (emphasis added).

■ Accordingly, we hold that under the WARN Act, when an affected employee's layoff date is earlier than the date of the plant shutdown, the affected employee is entitled to notice of the closing 60 days before the date of that employee's layoff. To apply this holding to a factual circumstance where the employee's layoff date and the plant closing date are not the same, the court must (1) identify a "plant closing" as defined by the Act; (2) identify those employees terminated *as a result of* the plant closing ("affected employees");[4] and finally (3) identify the 60th day before any affected employee is laid off as the latest date on which that employee or his representative may be given notice of his termination.

Turning to the case before us, as a result of the roof fall the mine was to shut down during a two-week period commencing December 5, 1995. All employees were given notice of this fact on October 2, 1995. The parties agree that the employees affected by the roof fall and the resulting plant closing included both the group of 89 employees laid off on October 3, 1995, and the remaining group of over 200 employees, the majority of whom were laid off beginning in December 1995. The date 60 days before each group's layoff thus was August 4, 1995, for the 89 employees and October 6, 1995, at the earliest, for the remaining employees. Since Martinka did not give the 89 affected employees 60 days' prior notice of their impending loss of employment, it violated the notice requirements of the WARN Act. Its notice on October 2, 1995, did, however, fulfill the WARN Act's notice requirements for the remaining employees laid off in December.

Martinka urges that the plain language of the WARN Act requires a different interpretation under which, in the event of a plant closing, an employer is required to give 60 days' notice of employment terminations only to those employees who are laid off within the 30–day aggregation period that serves to define the "plant closing." *See* 29 U.S.C. § 2101(a)(2). Martinka arrives at this interpretation of the WARN Act by emphasizing the Act's definition of "plant closing," stated as:

> The permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees.

*Id.* Martinka correctly notes that no "shutdown" of the Tygart River Mine "site" or of "one or more facilities or oper-

---

4. The term "affected employees" as used in the Act is defined to mean those "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing . . . by their employer." 29 U.S.C. § 2101(a)(5).

ating units" within that "site" took place until the period beginning December 5, 1995. Since 50 or more employees were laid off within a 30–day period in December when the "shutdown" occurred, Martinka concludes that it was then that a "plant closing" took place.

Martinka urges us to import this 30–day aggregation period into 29 U.S.C. § 2102(a) (the notice requirement), arguing that an employer is required to give notice only to those employees whose employment is terminated within the 30–day aggregation period. It argues that without this temporal limitation, the narrow definition of "plant closing" contained in 29 U.S.C. § 2101(a)(2) is lost, because the "plant closing" event extends to any termination of over 50 employees within a 30–day period, regardless of whether a "shutdown" occurs. In its brief on appeal, Martinka illustrates its point with the following example:

> [S]uppose an employer announced [in 1999] that, in 2005, it [will] have to shut down its widget plant. It continues to manufacture widgets throughout this time; however, on January 1, 2001, the employer lays off 60 workers due to a decreased demand for widgets.

Martinka concludes that, under a construction of the WARN Act that does not include a temporal limit to the duty to give notice to employees, a "plant closing" has occurred at the hypothetical widget factory on January 1, 2001, because "more than 50 workers suffered an employment loss within 30 days of each other after the announcement of a plant closing" to occur several years later.

What Martinka fails to appreciate, however, is that the WARN Act lays out *two* prerequisites for an employer's obligation to give notice of impending employment decisions to particular employees. The *first* is that the employer must order either a "plant closing" or a "mass layoff" as defined by the Act, 29 U.S.C. § 2101(a)(2) & (3), and the *second* is that the employees considered for notice must be "employees

who may reasonably be expected to experience an employment loss *as a consequence of a proposed plant closing or mass layoff,*" 29 U.S.C. § 2101(a)(5) (emphasis added). Thus, once a plant closing is identified—as defined in the statute—the 60 days' notice must be given to all employees *affected* by the closing. It is this causal connection between the plant closing and the laid-off employees—not any temporal limitation—that serves to define the class of employees to whom notice is due.

While the definition of "plant closing" includes a floating 30–day period for determining whether 50 employees are involved, *see* § 2101(a)(2), once an employer determines that its planned shutdown implicates the employment of 50 or more employees, the floating 30–day element of the definition becomes irrelevant. But to be entitled to 60 days' notice of their employment termination, the employees must still demonstrate a causal link between the plant closing and their loss of employment. Indeed, the statutory structure fortifies our conclusion that the requirement of a causal link in § 2102(a) is wholly separate from the 30–day definitional requirement for a "plant closing" in § 2101(a)(2).

The aggregation provisions contained in the definition of a "plant closing"—on which Martinka grounds its argument—are clearly not implicated in this case because Martinka's mine shutdown resulted in the loss of employment for more than 50 employees, both on October 3, 1995, and again in December. The aggregation provision of § 2101(a)(2) would be implicated only if the site being shut down employed fewer than 50 people or the shutdown was implemented in stages, each involving fewer than 50 employees. Thus, a shutdown affecting only 15 employees would not trigger the notice requirement. And to avoid manipulative employment actions at a given plant, the Act provides an aggregating mechanism that counts all employees laid off from a plant during *any* 30–day period. But the 50–employee requirement, amplified by the aggregating rules, relates

only to defining a "plant closing" as used in the WARN Act and does not define which employees are to be given notice. That function is performed by § 2101(a)(5), which explains who is an "affected employee" entitled to notice under § 2102(a).

Thus, at Martinka's hypothetical widget factory, a "plant closing" under the WARN Act does not occur merely because the employer lays off 60 workers. While the minimum 50–worker requirement is satisfied, there is at that time no "permanent or temporary shutdown of a single site of employment," as required by 29 U.S.C. § 2101(a)(2). While there is a shutdown planned for the year 2005, the employer at the widget factory is not required to give notice under the WARN Act to the group of 60 employees laid off in 2001 "due to the decreased demand for widgets" because that group's termination cannot be shown to be causally linked to, or "a consequence of," the plant closing planned for 2005. *See* 29 U.S.C. § 2101(a)(5).

Martinka also draws support for its interpretation of the WARN Act from the language of 20 C.F.R. § 639.5, which provides the general rule for when notice must be given. In particular, Martinka directs our attention to the language,

"When all employees are not terminated on the same date, the date of the first individual termination within the statutory 30–day or 90–day period triggers the 60–day notice requirement." 20 C.F.R. § 639.5(a). When read in context, however, this language provides Martinka with no support.[5] First, the reference to the 30–day or 90–day period triggering the 60–day notice requirement is merely a shorthand reference to the plant closing definition, which includes a floating 30–day period or a floating 90–day period. *See* 29 U.S.C. §§ 2101(a)(2), 2102(d). Stated in other words, the quoted portion of the regulation simply provides that when the 50–employee number has to be achieved by aggregation during a given 30–day period (or 90–day period, as applicable), the 60 days' notice is geared to the layoff date of the *first* employee laid off within the 30–day (or 90–day) period. The regulation also goes on to provide more generally that in any staged layoff, where the employer lays off employees at different times as a result of a plant closing, "[t]he first and each subsequent group of terminees are entitled to a full 60 days' notice." 20 C.F.R. § 639.5(a).

Nowhere, however, even in the sections cited by Martinka, is the issue of who is

---

5. The applicable provisions of the regulation read:

(a) *General rule.* (1) With certain exceptions ... notice must be given at least 60 calendar days prior to any planned plant closing or mass layoff, as defined in these regulations. When all employees are not terminated on the same date, the date of the first individual termination within the statutory 30–day or 90–day period triggers the 60–day notice requirement.... The first and each subsequent group of terminees are entitled to a full 60 days' notice. In order for an employer to decide whether issuing notice is required, the employer should—

(i) Look ahead 30 days and behind 30 days to determine whether employment actions both taken and planned will, in the aggregate for any 30–day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement; and

(ii) Look ahead 90 days and behind 90 days to determine whether employment actions both taken and planned each of which separately is not of sufficient size to trigger WARN coverage will, in the aggregate for any 90–day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement. An employer is not, however, required ... to give notice if the employer demonstrates that the separate employment losses are the result of separate and distinct actions and causes, and are not an attempt to evade the requirements of WARN.

(2) The point in time at which the number of employees is to be measured for the purpose of determining coverage is the date the first notice is required to be given. If this "snapshot" of the number of employees employed on that date is clearly unrepresentative of the ordinary or average employment level, then a more representative number can be used to determine coverage.

. . .

20 C.F.R. § 639.5(a).

entitled to notice *temporally* linked to a plant closing. The statutory linkage between the notice requirement and plant closings—both in cases of a single layoff of 50 employees or more and of an aggregated layoff over a 30–day period—remains the causal relationship defined in 29 U.S.C. § 2102(a) and § 2101(a)(5).

If we were to read 20 C.F.R. § 639.5(a) to limit the class of employees entitled to notice to those laid off during the 30–day period that serves to define a plant closing, as urged by Martinka, the regulation could not stand, as it would conflict with the WARN Act's plain language, which requires that an employer give notice of the order of a plant closing to all employees "who may reasonably be expected to experience an employment loss *as a consequence of a proposed plant closing* ... by their employer." 29 U.S.C. §§ 2102(a), 2101(a)(5) (emphasis added). We do not so construe 20 C.F.R. § 639.5(a).

For the foregoing reasons, we conclude that because the 89 employees laid off on October 3, 1995, were, under the WARN Act, "affected" by a plant closing, they were entitled to 60 days' advance notice of their layoff. Because they received only one day's advance notice, the district court correctly concluded that Martinka violated the Act. Accordingly, the judgment of the district court is

*AFFIRMED.*